**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LORENZO VECCHIOLI,

    Plaintiff,

    v.

BOREL PRIVATE BANK & TRUST CO., a California corporation on its own behalf and as Trustee of Andre LeRoy Trust; DEUTSCHE BANK NATIONAL TRUST COMPANY, a U.S. subsidiary as Trustee of the Eugene LeRoy Trust; UNION OIL COMPANY OF CALIFORNIA, a California corporation.

    Defendants.
_____/

No. C 05-2590 PJH

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

    Defendants Borel Private Bank & Trust Company ("Borel"), Deutsche Bank ("DB"), and Union Oil Company of California ("Unocal") move to dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  On November 9, 2005, defendants' motions came on for hearing before this court.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court GRANTS all defendants' motions to dismiss pursuant to Rule 12(b)(1), and alternatively GRANTS defendants Borel's and Unocal's motions to dismiss pursuant to Rule 12(b)(6), as follows and for the reasons stated at the hearing.

**INTRODUCTION**

This case has a long history in the state superior, appellate, and probate courts. Plaintiff possessed property interests in the Home Ranch ("the ranch"), a piece of real estate near the Santa Maria Valley on the California coastline. The ranch was originally owned by two brothers, one of whom was plaintiff's grandfather, Andre Leroy. The other brother, Eugene, was plaintiff's great uncle. Both Andre and Eugene had an undivided one-half interest in the ranch. Andre died in 1980; and Eugene passed away in 1984. Andre's one-half interest passed to his widow and their descendants; and Eugene's one-half interest likewise passed to his widow and descendants.

Andre's one-half interest is held in the Andre Leroy Trust, which is administered by defendant Borel. Plaintiff's mother, Nichole Vecchioli, along with his aunt, Jean Leroy, and his grandmother, Annette Leroy, appear to be alive and are the current income beneficiaries of the Andre Leroy trust. Plaintiff, along with his siblings and cousins, is one of several contingent remaindermen of the Andre Leroy Trust.

By comparison, plaintiff does not appear to have a present interest -- contingent or otherwise -- in the Eugene Leroy trust. Apparently, plaintiff will become one of the remaindermen under that trust only if none of Eugene Leroy's descendants survive to take under the trust. The Eugene Leroy Trust is currently administered by defendant DB, formerly Bankers Trust.[1]

Following the deaths of Andre and Eugene Leroy, in 1994, their families discovered that the ranch had been contaminated by a petroleum product, called a diluent, that defendant Unocal, had injected into the oil field underlying the ranch. Unocal had been leasing the oil

---

[1]There is some dispute regarding the characterization of plaintiff's interests under the trusts. Contrary to the characterization set forth above, in his complaint, plaintiff asserts that he is "a beneficiary of the Andre LeRoy Trust and contingent remainder beneficiary of the Eugene LeRoy Trust." Complaint, par. 2.

In the recent April 15, 2005 petition submitted by defendants Borel and DB for retroactive approval of a settlement agreement before the state probate court (discussed later in this order), Borel and DB noted that "Lorenzo Vecchioli's current interest and standing [with respect to the trusts] is tenuous but not negligible." Exh. U, at p. 31.

2

field beneath the ranch, known as the "Guadalupe Oil Field," for oil and gas production since approximately 1950.

That same year, in 1994, Unocal admitted responsibility for the contamination, ceased production, and began remediation of the site. The two trustees, Borel and Bankers' Trust (predecessor to DB), commenced negotiations with Unocal, which included selling the ranch to Unocal, settling the trusts' claims against Unocal, and obtaining indemnity agreements from Unocal regarding the contamination.

### I.   Vecchiolis' Petition to Remove Borel as Trustee to Andre Leroy Trust

The Vecchioli family, including plaintiff, opposed the Unocal settlement talks, and any sale of the ranch to Unocal. As a result of this disagreement, in October 1994, the Vecchiolis filed a petition with the state probate court to remove Borel as trustee. Following a two-day trial, the probate court denied the Vecchiolis' petition in October 1994. However, in February 1996, the state appellate court held that the probate court applied the wrong legal standard and remanded the case for further proceedings. In 1999, after an eight-day trial, the probate court again denied the Vecchiolis' petition to remove Borel, and the state appellate court affirmed in 2001.

### II.   Borel's Petition to Approve Settlement with Unocal

Meanwhile, while the Vecchiolis' petition was pending in the probate court and the California Court of Appeal, Borel and DB reached a settlement with Unocal on behalf of both the Andre and Eugene Leroy trusts. Borel and DB petitioned the probate court for approval of the settlement agreements, which the probate court granted in September 1995. The Vecchioli family appealed the order granting Borel's petition with respect to the Andre Leroy Trust.[2] In October 1996, the state appellate court remanded to the probate court in light of its February 1996 decision regarding the Vecchiolis' petition to remove Borel.

The probate court reconsidered Borel's petition for approval of the settlement

---

[2]The Vecchiolis, however, *did not* appeal the probate court's order granting approval of the DB settlement. See Exh. G.

3

agreement in conjunction with the Vecchiolis' petition to remove Borel. On remand, in 1999, the probate court again granted Borel's petition for approval. In February 2001, in the same decision in which it affirmed the probate court's second denial of the Vecchioli's petition to remove Borel, the state appellate court again remanded Borel's petition for approval to the probate court with further instructions regarding the standards to be applied by the probate court. For the third time, in March 2002, the probate court granted Borel's motion. The Vecchiolis again appealed.

### III.  Borel and DB Reach New Settlement with Unocal/Sale of Ranch Closes

However, in the meantime, in May 2002, Borel and DB entered into new settlement agreements with Unocal. According to defendants Borel and DB, these agreements, unlike the 1995 agreements, *did not* require probate court approval. The sale of the ranch to Unocal closed on July 2, 2002 in accordance with those agreements.

Accordingly, in November 2003, the state appellate court ruled that the Vecchiolis' appeal was moot in light of the July 2002 sale, and remanded to the probate court for dismissal.

### IV.  Probate Court Trial

In May 2002, the Vecchiolis filed another petition against Borel in the probate court seeking an injunction against the closing of the 2002 settlement agreements. The probate court denied the motion for a preliminary injunction, and the sale proceeded. In April 2005, the Vecchioli family, with the exception of plaintiff, dismissed the petition with prejudice pursuant to another settlement agreement. In 2004, plaintiff filed his fourth amended petition ("4AP") on his behalf only, against Borel and Unocal, which the probate court denied on the merits in May 2005. Plaintiff did not appeal.

### V.  Civil Lawsuit for Damages

At the same time that the parties were embroiled in litigation before the probate court, the Vecchiolis filed a civil complaint for damages in the San Mateo County Superior Court against Borel and DB. The civil complaint alleged claims arising out of the settlement and

1 sale of the ranch, including breach of trust; breach of fiduciary duty; negligence; and breach of
2 duty of loyalty. The action lay dormant until 2004.

In January 2005, plaintiff filed a third amended complaint ("3AC") in the state court lawsuit on his behalf only, which included eighteen claims. That complaint was nearly identical to the complaint filed in this court.

Subsequently, in April 2005, all of the Vecchiolis, with the exception of plaintiff, settled the state court lawsuit and dismissed it with prejudice. Thereafter, on April 25, 2005, May 2, 2005, and June 7, 2005, the state court sustained DB's, Borel's, and Unocal's respective demurrers to plaintiff's complaint, concluding that it lacked subject matter jurisdiction, and dismissed the complaint in its entirety. Plaintiff did not appeal the state court's dismissal. Instead, less than three weeks after the state court's dismissal of the lawsuit, he filed this federal lawsuit.

### VI. Borel and DB's Retroactive Approval of 2002 Settlement with Unocal

On April 15, 2005, Borel and DB filed a petition for retroactive approval of the trustees' 2002 settlement agreement with Unocal, which resulted in the sale of the ranch. Defendants claim that the petition was served on plaintiff, but he apparently did not oppose the petition. On May 20, 2005, the probate court approved the petition. Plaintiff did not appeal.

### CLAIMS FOR RELIEF

Plaintiff asserts nineteen claims before this court as follows:

(1) breach of trust under a written agreement (Andre and Eugene Trusts) -- Borel and DB;

(2) breach of fiduciary duties under a written agreement (Andre and Eugene Trusts) -- Borel and DB;

(3) negligence -- Borel and DB;

(4) breach of duty of loyalty -- Borel and DB

(5) professional negligence/destruction of capacity of oil extraction -- Borel and DB;

(6) misrepresentation -- Borel and DB;

(7) restitution -- Borel and DB;

5

(8)  inducing breach of trust -- Unocal;

(9)  fraud/false statement, conspiracy to defraud, theft, misapplication -- all defendants;

(10) waste -- all defendants;

(11) private continuing nuisance -- all defendants;

(12) private permanent nuisance -- all defendants;

(13) public continuing nuisance -- all defendants;

(14) public permanent nuisance -- all defendants;

(15) negligence -- all defendants;

(16) permanent trespass -- all defendants;

(17) continuing trespass -- all defendants;

(18) unfair competition -- all defendants;

(19) declaratory relief -- all defendants;

Eighteen of Vecchioli's nineteen claims were raised in his third amended complaint before the state superior court in the civil action described above. *See* Exh. L, Request for Judicial Notice.[3] As noted above, the state court dismissed that complaint for lack of subject matter jurisdiction, ruling that jurisdiction lay exclusively in the state probate court. Exhs. N, O, P.

The only differences between the claims alleged in the 3AC and the instant complaint are as follows:

- Claim Nine appears to be a new claim, not raised below;
- Claims Ten through Eighteen set forth above were raised only against defendant Unocal in the state court complaint. Vecchioli now raises the claims against all three defendants;
- Claim Three, which lists twenty-three statutory provisions in support of Vecchioli's negligence claim, now cites to four federal statutes in addition to

---

[3] All exhibits cited are exhibits to the defendants' request for judicial notice.

6

nineteen California provisions; and

- Claims five, eighteen, and nineteen now also cite to federal authority in addition to California law.

Additionally, Vecchioli also raised many of the claims contained in the instant complaint in an action before the state probate court seeking to remove Borel as a trustee. *See* Exh. R. The claims before the state probate court were brought against Borel and Unocal only – not DB. They included:

- breach of trust under a written agreement;
- breach of fiduciary duty under a written agreement;
- negligence;
- breach of duty of loyalty;
- professional negligence;
- misrepresentation;
- restitution;
- inducement of and participation in breach of trust; and
- declaratory relief

*See id.* As discussed above, the state probate court held a trial, and denied Vecchioli's petition on the merits on May 20, 2005. Exh. S.

## DISCUSSION

The banks, Borel and DB, have filed a joint motion to dismiss. Unocal has also filed a motion to dismiss. The motions are similar in their arguments and consistent regarding the underlying facts. The three defendants submit numerous theories under which this court may dismiss Vecchioli's complaint. However, only one theory appears to mandate dismissal of all claims against all defendants – the probate exception to federal jurisdiction.

////

### I.   Probate Exception to Jurisdiction

For the reasons that follow and for the reasons stated on the record, the court

dismisses the entire complaint against all defendants pursuant Rule 12(b)(1) and the probate exception to jurisdiction.

"Where a state has relegated jurisdiction over probate matters to a special court and if that state's courts of general jurisdiction do not have jurisdiction to hear probate matters, then the federal courts also lack jurisdiction over probate matters." *In re Marshall*, 392 F.3d 1118, 1136 (9th Cir. 2004), *cert granted,* 2005 WL 1198459 (September 27, 2005). "A state court's holding regarding its jurisdiction over probate matters is binding on federal courts and is immune from collateral attack under the doctrine of res judicata." *Id.*

Here, the state superior court's ruling that subject matter jurisdiction lies with the state's probate court is binding on this court pursuant to the Ninth Circuit's decision in *Marshall.* 392 F.3d at 1136. Exhs. N, O, P. In Vecchioli's civil case, the state superior court ruled that it:

> ha[d] no jurisdiction of the subject matter of the cause of action alleged in the pleading. The claims made in Plaintiff Vecchioli's 3AC concern the internal affairs of a trust. They may not be asserted in a civil action at law, as in the 3AC, but fall within the exclusive jurisdiction of the Probate Court, Probate Code § 17000(a).

Vecchioli's 3AC, upon which the state court ruled, was nearly identical to the complaint here. Thus, the state court's decision that it lacked jurisdiction as to the eighteen claims contained in the 3AC is binding on this court to the extent that Vecchioli alleges those claims here.

Moreover, even if this court were not bound by the state superior court's determination, it would nevertheless find that the probate exception to jurisdiction applies in this case.

The Ninth Circuit employs a two-part inquiry in determining whether the probate exception to jurisdiction applies. *Id.* at 1133. "The first part of the inquiry focuses on . . . whether the matter is purely probate in nature, in that the federal court is being asked directly to probate a will or administer an estate." *Id.* The answer is usually no. *Id.* The second part of the inquiry focuses on whether the matter is probate-related by determining whether, by exercising jurisdiction over the matter, the federal court would: (1) interfere with probate proceedings; (2) assume general jurisdiction of the probate; or (3) assume control over

property in custody of the state court. *Id.* "The reach of the probate exception encompasses not only direct challenges to a will or trust, but also questions which would ordinarily be decided by a probate court in determining the validity of the decedent's estate planning instrument." *Id.*

All of the claims in Vecchioli's complaint before this court fall within the second part of the *Marshall* inquiry, including Vecchioli's ninth claim, which was not raised before the state superior court. Accordingly, the court GRANTS defendants' motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

## II.   Res Judicata

Federal courts are required to give full faith and credit to state court judgments under 28 U.S.C. § 1738. *Manufactured Home Communities ("MHC") v. City of San Jose*, 420 F.3d 1022, 1030 (9th Cir. 2005) (citing *San Remo Hotel, L.P. v. City & County of San Francisco*, 125 S.Ct. 2491 (2005)). "Generally, under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id.* (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). A federal court is required to look to state law to determine the preclusive effect of a state court judgment. *Id.*

California's res judicata standard is based on a primary rights theory. The California Supreme Court has explained that the primary rights theory:

> provides that a cause of action is comprised of a 'primary' right of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action.

*Id.* (quoting *Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888, 903-04 (Cal. 2002)). "A party may bring only one cause of action to vindicate a primary right. " *Id.* "Claims not raised in this single cause of action may not be raised at a later date." *Id.*

Defendants Borel and Unocal argue that all of the claims in the complaint must be dismissed as to them under Rule 12(b)(6) as res judicata. Their argument is essentially that

9

1 the state probate court's denial of Vecchioli's 4AP on the merits on May 20, 2005, *see* Exh.

2 S., is res judicata as to the claims currently raised by Vecchioli.

3 Claims one through eight and nineteen in the instant complaint are nearly identical to
4 the claims raised by Vecchioli in his 4AP before the probate court. Exh. R. Therefore, these
5 claims, which were denied by the probate court after a trial and on the merits, may be
6 dismissed as res judicata.

7 Borel and Unocal further argue that the remaining claims before this court – claims nine
8 through eighteen – should also be dismissed as res judicata because Vecchioli should have
9 included all of these claims in his 4AP before the probate court. Defendants note that these
10 remaining, primarily tort claims are predicated on the release of the diluent by Unocal in its oil
11 production activities at the Home Ranch, activities that Vecchioli admits terminated in 1994.
12 Therefore, Vecchioli could have included all of the tort claims in his 4AP filed with the probate
13 court in 2004, but chose not to do so.

14 Defendants' argument is supported by California law, the applicable law in determining
15 the scope of res judicata here. The California Supreme Court has held that:

> If [a] matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is res judicata on matters which were raised or could have been raised, on matters litigated or litigable.

20 *Sutphin v. Speik*, 15 Cal.2d 195 (Cal. 1940).

21 In construing the scope of res judicata under California law, the Ninth Circuit has
22 likewise held that where different legal claims are simply relabelled under different legal
23 theories of recovery, a state court's prior decision will nevertheless be res judicata. *See*
24 *MHC*, 420 F.3d at 1032. "Different theories of recovery are not separate primary rights." *Id.*

25 That is what has happened in the instant case. Claims nine through eighteen merely
26 assert different legal theories of recovery from those asserted in Vecchioli's 4AP before the
27 state probate court. For these reasons, the court alternatively dismisses Vecchioli's complaint
28

10

**against defendants Borel and Unocal** with prejudice under Rule 12(b)(6) because it is barred by res judicata principles.

Because DB was not named as a party in the probate court action discussed above, it does not move for dismissal based on the res judicata effect of the probate court's dismissal of the 4AP. Instead, DB argues that claims four, six, seven, and nine through nineteen are barred by res judicata based on the probate court's approval of 1995 settlement agreements with Unocal, Exh. G, and the probate court's retroactive 2005 approval of the 2002 settlement agreements. Exh. U and V.

This court has reviewed the state court documents, and agrees that the state court's orders approving the settlements are res judicata as to claims four, six, seven, and nine through nineteen as alleged against DB. California courts are clear that even a default judgment is treated as a judgment "on the merits" and is res judicata as to the related claims. *Martin v. General Finance Co.*, 48 Cal.Rptr. 773, 776 (Cal. App. 1966).

Accordingly, the court alternatively dismisses claims four, six, seven, and nine through nineteen in Vecchioli's complaint **against defendant DB** with prejudice under Rule 12(b)(6) because they are barred by res judicata principles.

### III. Defendants' Other Arguments

The court declines to reach defendants' other arguments in support of dismissal, including defendant DB's argument regarding the statute of limitations, Unocal's argument regarding the settlement agreement's release, and Unocal's argument that plaintiff lacks standing.

////

### CONCLUSION

For the reasons set forth above, the court GRANTS defendants' motions to dismiss the complaint in its entirety pursuant to Rule 12(b)(1) and the probate exception to jurisdiction. Alternatively, the court dismisses the complaint in its entirety with prejudice as to defendants Borel and Unocal only pursuant to Rule 12(b)(6) on res judicata grounds; and dismisses

claims four, six, seven, and nine through nineteen against defendant DB with prejudice under Rule 12(b)(6).

This order fully adjudicates the matters listed at nos. 10, 12 of the clerk's docket and closes this case.

Dated: November 10, 2005

_____
PHYLLIS J. HAMILTON
United States District Judge